# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHRISTOPHER CALLAHAN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-0905 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 20, 24 |
| | : | | |
| MICHAEL J. ASTRUE, | : | | |
| Commissioner of Social Security, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### Granting the Plaintiff's Motion for Judgment of Reversal; Denying the Commissioner's Motion for Judgment of Affirmance

## I. INTRODUCTION

The plaintiff, Christopher Callahan, commenced this action against the Commissioner of Social Security ("the Commissioner"), seeking to overturn the Commissioner's decision to deny him disability insurance benefits and supplemental security income benefits under the Social Security Act ("the Act"), 42 U.S.C. §§ 301 *et seq.* Specifically, the plaintiff challenges the Commissioner's decision to affirm a ruling by an administrative law judge ("ALJ"), who determined that the plaintiff was not "disabled" for purposes of the Act because his impairments permitted him to perform several jobs that exist in the national economy.

This matter is now before the court on the plaintiff's motion for judgment of reversal of the Commissioner's decision and the Commissioner's motion for judgment of affirmance. The plaintiff argues that because the ALJ failed to address and explain a conflict between the testimony of a vocational expert ("VE") and information provided in the Dictionary of Occupational Titles ("DOT") published by the Department of Labor, the Commissioner's decision to affirm the ALJ's ruling was not based on substantial evidence. Conversely, the

Commissioner argues that the ALJ's decision was supported by substantial evidence and should not be disturbed by this court.

Having reviewed the parties' submissions and the entire record, the court concludes that the ALJ decision adopted by the Commissioner was not supported by substantial evidence. The court therefore grants the plaintiff's motion for judgment of reversal, denies the Commissioner's motion for judgment of affirmance and remands this matter to the Social Security Administration ("SSA") for further proceedings.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Legal Framework for ALJ Review of Social Security Disability Claims

To become eligible for disability insurance benefits under the Act, a claimant must: (1) meet insured status requirements;[1] (2) file an application for the benefits; and (3) suffer from a "disability." 42 U.S.C. § 423(a). The Act defines the term "disability" to mean "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." [2] *Id.* § 423(d)(1)(A). In addition, the Act provides that

---

[1]     A claimant meets insured status requirements when he or she is "insured for disability benefits (as defined under [42 U.S.C. § 423](c)(1))]," is below the retirement age and is a United States citizen or national. 42 U.S.C. § 423(a)(1)(A)-(C).

[2]     To become eligible for supplemental security income benefits, a claimant must be a "disabled individual" as defined in 42 U.S.C. § 1382c(a)(3)(A), which mirrors the definition in 42 U.S.C. § 423(d)(1)(A), and have income and resources below a statutorily determined amount. 42 U.S.C. §§ 1381a, 1382, 1382c.

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*Id.* § 423(d)(2)(A).

To determine whether a claimant is disabled for purposes of the Act, an ALJ must conduct a five-step inquiry. 20 C.F.R. § 404.1520. Specifically, an ALJ must evaluate whether: (1) the claimant is "presently engaged in substantial gainful activity"; (2) the claimant has a "medically severe impairment or impairments"; (3) the claimant's impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; (4) the impairment prevents the claimant from performing his or her past relevant work; and (5) the claimant, in light of his or her age, education, work experience and residual functional capacity ("RFC"),[3] can still perform another job that is available in the national economy. *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (citing 20 C.F.R. § 404.1520). Through the first four steps of this inquiry, the claimant bears the burden of proof. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, however, the burden shifts to the Commissioner to identify

---

[3]     The pertinent regulations define an individual's RFC as "the most [that person] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining an individual's RFC, the SSA must consider all of a claimant's "medically determinable [mental and physical] impairments," even those that could not be classified as "severe." *Id.* A claimant is responsible for submitting all information that the SSA needs to evaluate his or her RFC, although the SSA has a recognized duty to develop a claimant's "complete medical history," which includes helping the claimant arrange for consultations or request records if necessary. *Id.* § 404.1545(a)(3).

specific jobs sufficiently available in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v); *see also Bowen*, 482 U.S. at 146 n.5 ("It is true . . . that the [Commissioner] bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy.").

In determining whether an individual can still perform another job that is available in the national economy, the Commissioner may consult the Medical-Vocational Guidelines set forth in the appendices of SSA regulations. *See* 20 C.F.R. Part 404 Subpart P §§ 201.00-04.00. These guidelines evaluate a claimant's disability in light of his or her age, education, work experience and RFC to perform "sedentary," "light," "medium" or "heavy" work. *Id.* The regulations, however, make clear that "[s]ince the [guidelines] are predicated on an individual's having an impairment which manifests itself by [physical or 'exertional' limitations], they may not be fully applicable where the nature of an individual's impairment does not result in such [exertional] impairments" but in "non-exertional" impairments. *Id.* § 200.00(e). Non-exertional impairments include "mental impairments" and "environmental restrictions," such as an inability to tolerate dust or fumes. *Id.*

If a claimant's RFC includes non-exertional limitations that preclude the application of the Medical-Vocational Guidelines, the Commissioner may choose to consult a VE. 20 C.F.R. § 404.1566(e). Specifically, the applicable regulations provide that the Commissioner may consult a VE when "the issue in determining whether [a claimant is] disabled is whether [his or her] work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue." *Id*; *but see Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)

(stating that the Commissioner is required to consult a VE "in cases where a non-exertional limitation might substantially reduce a range of work an individual can perform").

When testifying on whether a claimant can perform jobs that exist in the national economy, the VE may draw from a number of sources, including the DOT published by the Department of Labor. 20 C.F.R. § 404.1566. The DOT is a compendium of "standardized occupational information" that provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker. *See generally* DOT, 1991 WL 645964 (1991). For each occupation, the DOT describes the level of skill and ability required in each of three categories: "physical demands," "specific vocational preparation" and "general education development." *Id.*, 1991 WL 688702.

## B. The Plaintiff's Disability Claim

The plaintiff is in his early fifties and resides in the District of Columbia. Admin. R. at 62-64. He graduated high school, although difficulties in learning to read and write required him to take special education classes from third grade through sixth grade. *Id.* at 352-53. He has not completed any formal vocational training. *Id.* The plaintiff has been diagnosed with "osteoarthritis of the lower extremities, depressive disorder, mild mental retardation, and amnestic disorder." *Id.* at 20. With respect to his mental limitations, a previous evaluator described his intelligence, concentration, impulse control, judgment, insight and prognosis as "poor." *Id.* at 248. Before his assorted conditions allegedly prevented him from working, the plaintiff had worked as a laundry aide, a maintenance worker and a janitor. *Id.* at 340-41.

On June 28, 2005, the plaintiff applied for disability insurance benefits and supplemental security income benefits under Titles II and XVIII of the Act. *Id.* at 62-64. He claimed that his

various conditions, particularly his depression and osteoarthritis, qualified him as "disabled" for purposes of the Act. *Id.* at 79. The Commissioner denied his claims and subsequently declined to reconsider that denial. *Id.* at 328-35. The plaintiff then requested an ALJ hearing, *id.* at 46, which took place on January 11, 2008, *id.* at 345.

At the hearing, the ALJ received testimony from the plaintiff and a VE. *Id.* at 347-70. The ALJ elicited testimony relevant to steps four and five of the five-step determination process: whether the plaintiff's RFC allowed him to perform work he had performed in the past and whether the plaintiff's RFC allowed him to perform any other work existing in sufficient quantities in the national economy. *Id.* at 365-69. To assist in this determination, the ALJ posed a "hypothetical question" to the VE that described "a person who has limitations that are similar to [the plaintiff's]." *Id.* at 365. Specifically, the ALJ instructed the VE as follows

> I want you to consider a person whose age ranges from . . . 46 to 49. A person who has a high school education, a person who has the claimant's training and work experience, and a person who has exertional limitations which would permit light and sedentary work, unskilled, but less than a full range of each. But assume also that there are the following non-exertional impairments and limitations. Such a person would not be able to do any work which would involve any use of ladders, ropes, or scaffolds. All of the other postural activities could be performed occasionally. That is, no more than one-third of the time, and that would include use of stairs or ramps, balancing, bending or stooping, kneeling, crouching or squatting, as well as crawling.
>
> Such a person would also have to avoid concentrated exposure to extremes in temperature, wetness, high humidity. Same would apply to fumes, odors, dusts, gases, and poor ventilation, as well as hazards such as moving machinery, or unprotected heights.
>
> And finally, such person would have, due to a combination of pain, perhaps some effects of medication but . . . also emotional factors. Would have moderate limitations as to the following, and I define moderate as meaning that there's more than a slight limitation, but that the individual is still able to function satisfactorily with regard to an activity; in the ability to understand as well as remember detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and work week without

interruptions from psychologically-based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods; to respond appropriately to changes in work setting; and to set realistic goals and make plans independently of others.

There would also be a marked limitation in the ability to carry out detailed instructions, and marked means that there is a serious limitation, but that there is, which results in a substantial loss in the ability to function effectively regarding that activity.

*Id.* at 366-67.

The VE acknowledged that the plaintiff, as described in the hypothetical, could not perform his relevant past work. *Id.* at 367. The VE did, however, identify four positions in the national economy that he believed the plaintiff could perform. *Id.* at 368. Specifically, the VE testified that the plaintiff could work as a router,[4] a sales attendant,[5] an addresser[6] and a call out operator.[7] *Id.*

---

[4] A "router" is an individual who "[s]tamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes" and "[r]eads addresses on articles and determines route, using standard charts." DOT, 1991 WL 672123. According to the VE, 76,000 router positions exist in the national economy and 1,000 exist in the local economy. Admin. R. at 368.

[5] A "sales attendant" is an individual who "[p]erforms any combination of . . . duties to provide customer service in [a] self-service store," such as "[a]id[ing] customers in locating merchandise" and "[a]rrang[ing] stock on shelves or racks in [a] sales area." DOT, 1991 WL 672643. The VE testified that 85,000 such positions exist nationally and 1,500 exist locally. Admin. R. at 368.

[6] An "addresser" is an individual who "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing." DOT, 1991 WL 671797. The VE testified that there are 50,000 addresser positions in the national economy and 800 in the local economy. Admin. R. 368.

[7] A "call out operator" is an individual who performs tasks including "[c]ompil[ing] credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using [a] telephone" and "[c]op[ying] information onto [a] form to update information for credit record on file, or for computer input." DOT, 1991 WL 672186. According to the VE, 40,000 such positions exist in the national economy and 600 exist in the local economy. Admin. R. at 368.

On March 8, 2008, the ALJ issued a decision denying the plaintiff's application for benefits, concluding that the plaintiff could perform several jobs that existed in the national economy and was therefore not "disabled." *Id.* at 20. In pertinent part, the ALJ found that

> both prior to the date the claimant was last insured, and continuing through the current time period, the claimant has had the residual functional capacity to perform light work involving: no use of ladders, ropes, or scaffolds; occasional use of stairs or ramps, balancing, bending, stooping, kneeling, crouching, squatting, or crawling; must avoid concentrated exposure to extremes in temperatures, wetness, high humidity, fumes, odors, dust, gases, and poor ventilation, and hazards, such as moving machinery and unprotected heights; a marked limitation in the ability to carry out detailed instructions, maintain concentration and attention for extended periods, respond appropriately to changes in the work setting, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

*Id.* at 23. The ALJ went on to conclude that "[t]he restrictions to simple, low stress work accommodate the claimant['s] depressive symptoms, and allow for simple tasks, commensurate with the claimant's intellectual functioning." *Id.* The Commissioner adopted the ALJ's decision. *Id.* at 6-8.

After commencing this action in May 2009, the plaintiff filed a motion for judgment of reversal of his denial of benefits, asserting that the Commissioner's decision was not supported by substantial evidence and was thus erroneous as a matter of law. *See generally* Pl.'s Mot. The Commissioner responded by filing a motion for judgment of affirmance, arguing that the VE's testimony provided substantial evidence for the decision to deny benefits to the plaintiff. *See generally* Def.'s Mot. These dispositive motions are now ripe for adjudication.

## III. ANALYSIS

### A. Legal Standard for Review of a Final Decision by the Commissioner of Social Security

Federal district courts have jurisdiction over actions challenging final determinations by the Commissioner. 42 U.S.C. § 405(g). In seeking judicial review of such a determination, the plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). The standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence, *Fla. Mun. Power Agency v. Fed. Energy Regulatory Comm'n*, 315 F.3d 362, 365-66 (D.C. Cir. 2003), and "calls for careful scrutiny of the entire record" to determine whether the Commissioner, acting through the ALJ, "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[,]" *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citing *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989)). The court's role is not to determine whether the claimant is disabled; rather the court may assess only whether the agency's findings are based on substantial evidence and a correct interpretation of the law. *Id.*

The court has the authority to affirm, modify or reverse the Commissioner's decision, "with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). This Circuit has, however, instructed that "[i]f the case is one that involves the taking of additional evidence for any reason, the district court is obliged to obtain an enhancement or revision of the record by

way of remand to the [Commissioner]." *Igonia v. Califano*, 568 F.2d 1383, 1389 (D.C. Cir. 1977).

## B. The Court Grants the Plaintiff's Motion for Judgment of Reversal Because the ALJ's Decision Was Not Based on Substantial Evidence

The plaintiff contends that the court should vacate the Commissioner's final decision to adopt the ALJ's ruling because that ruling was not supported by substantial evidence and is erroneous as a matter of law. Pl.'s Mot. at 1. The plaintiff notes that the ALJ asked the VE if jobs existed in the national economy that an individual could perform with the plaintiff's age, education, work experience and an RFC that included "a marked limitation in the ability to carry out detailed instructions." *Id.* at 4. According to the plaintiff, however, the four jobs that the VE identified in response all require that very capability based on the occupational descriptions set forth in the DOT. *Id.* at 6. Thus, the plaintiff argues, because the Commissioner has not identified any jobs in the national economy that the plaintiff can perform, he has not offered substantial evidence to support his determination that the plaintiff is not disabled. *Id.* Furthermore, the plaintiff asserts that the ALJ failed to recognize or address the conflict between the DOT and the VE's testimony, as required by the SSA's guidelines. *Id.* The plaintiff contends that because the Commissioner's determination is not supported by substantial evidence, his decision is clearly erroneous and that he is entitled to a reversal of the judgment denying him benefits. *Id.* at 1.

In his opposition and motion for affirmance, the Commissioner argues that his decision to deny the plaintiff's application for disability benefits is supported by substantial evidence. Def.'s Mot. at 11. The Commissioner focuses on the ALJ's conclusion that the plaintiff can perform "simple, low stress work" and maintains that that conclusion is supported by substantial

evidence. *Id.* at 7. Furthermore, the Commissioner argues that the DOT does not provide the full range of abilities that would allow one to perform any of the jobs that it defines, such that in certain circumstances, an individual with the plaintiff's limitations could perform the two less demanding occupations that the VE identified. *Id.* at 9. The Commissioner concludes that because the plaintiff could perform jobs available in the national economy, his conclusion that the plaintiff was not disabled is supported by substantial evidence. *Id.* at 11.

In his opposition to the Commissioner's motion for affirmance, the plaintiff asserts that the Commissioner failed to respond to the argument that the ALJ did not address the conflict between the DOT and the VE's testimony. Pl.'s Opp'n at 1-2. The plaintiff also argues that the Commissioner erroneously concluded that the ALJ included in the plaintiff's RFC a limitation to "simple, low stress work." *Id.* at 2-3. The plaintiff observes that the ALJ did not include such a limitation in the plaintiff's RFC and argues that even if he had, the ALJ did not include the limitation in the hypothetical that he posed to the VE, such that the VE's analysis would be "flawed" in any case. *Id.* at 3.

Prior to 2000, the Circuits had reached differing conclusions on the proper method for resolving conflicts between a VE's testimony and vocational information in the DOT. *Compare Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (holding that a VE's testimony "trumps" the DOT in the case of a conflict because "the DOT 'is not the sole source of admissible information concerning jobs'" (quoting *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994))) *with Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995) (observing that "when expert testimony conflicts with the DOT, the DOT controls" (citing *Campbell v. Bowen*, 822 F.2d 1518, 1523 n.3 (10th Cir. 1987))). The SSA settled the disagreement in Social Security Ruling ("SSR") 00-4p.

SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). The ruling states that "[n]either the DOT nor the VE [] evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE [] is reasonable and provides a basis for relying on the VE [] testimony rather than on the DOT information." *Id.* The ruling further provides that when VE testimony conflicts with the DOT,

> the adjudicator must resolve [such a] conflict before relying on the VE [] evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*Id.* Thus, current SSA rulings and regulations require ALJs to inquire about conflicts between VE testimony and the DOT before relying on a VE's testimony as substantial evidence that a claimant is not disabled. *See id.*; *see also* 20 C.F.R. § 402.35(b)(1) (providing that SSA rulings, once published in the Federal Register, "are binding on all components of the Social Security Administration").

As previously discussed, the ALJ who ruled on the plaintiff's application instructed the VE to consider an individual with a "marked limitation in the ability to carry out detailed instructions," with the term "marked limitation" meaning "a serious limitation . . . which results in a substantial loss in the ability to function effectively regarding that activity." Admin. R. at 367. The VE testified that such an individual could work as a "sales attendant," "call out operator," "router" and "addresser." *Id.* at 368. As described in the DOT, sales attendant and call out operator positions require a worker capable of functioning at Reasoning Level 3, and the router and addresser positions require a worker capable of functioning at Reasoning Level 2. *See* DOT, 1991 WL 672643 (1991) (sales attendant); *id.*, 1991 WL 672186 (call out operator); *id.*,

1991 WL 672123 (router); *id.*, 1991 WL 671797 (addresser). Notably, according to the DOT, Reasoning Level 2 – the lower of the two levels at issue here – requires that a worker have the ability to "[a]pply commonsense understanding to *carry out detailed but uninvolved written or oral instructions.*" *Id.*, 1991 WL 688702 (emphasis added).

Thus, during the plaintiff's ALJ hearing, the VE testified that an individual with a "marked limitation in the ability to carry out detailed instructions" could perform occupations that, according to the DOT, require a worker to carry out detailed instructions. *See* Admin. R. at 368; DOT, 1991 WL 688702. This conflict between the VE's testimony and the DOT's occupational descriptions triggered the ALJ's duty under SSR 00-4p to address and resolve the conflict in his or her factual findings. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (reversing and remanding in part an ALJ's decision in order to allow the ALJ to address an apparent conflict between the VE testimony regarding the suitable positions and the descriptions of those positions set forth in the DOT); *Boone v. Barnhart*, 353 F.3d 203, 204-07 (3d Cir. 2003) (reversing and remanding because the ALJ failed to address a conflict between the VE's testimony that the claimant could work as an inventory clerk, home health aide and sale counter clerk and the occupational information about those positions contained in the DOT); *see also Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999) ("To relieve the ALJ of the burden to thoroughly develop the vocational evidence at step five would shift the burden to the claimant in the form of a requirement to cross-examine the vocational expert [and t]o do so would contravene basic principles of social security law.").

The ALJ relied extensively on the VE's testimony to support his decision to deny the

plaintiff's application for benefits. *See* Admin. R. at 25. The ALJ, however, made no attempt to address or reconcile the conflict between the VE's testimony and the information in the DOT. *See id.* at 14-26. As a result, his decision fails to meet the requirements of SSR 00-4p and must be reversed. *See Hackett*, 395 F.3d at 1176; *Boone*, 353 F.3d at 204-07.

Furthermore, because the conflict between the VE's testimony and the DOT applies to each of the four jobs that the VE identified as suitable positions for the plaintiff, the ALJ's conclusion that there are jobs within the national economy that the plaintiff can perform was not based on substantial evidence. *See Boone*, 353 F.3d at 206-08, 211 (holding that ALJ's decision to deny benefits was not based on substantial evidence because both suitable jobs that the VE identified required a capacity for medium exertion whereas the claimant's RFC limited her to light exertion); *Steward v. Barnhart*, 44 F. App'x 151, 152 (9th Cir. 2002) (reversing a denial of benefits because all three jobs that the VE identified required a level of transferable skills above the claimant's abilities); *cf. Turner v. Astrue*, 710 F. Supp. 2d 95, 110-12 (D.D.C. 2010) (upholding an ALJ's denial of benefits because claimant's skill level allowed him to perform at least one of three jobs the VE identified). Accordingly, because the Commissioner did not identify any jobs existing in sufficient numbers in the national economy that the plaintiff could perform, the ALJ's decision to deny benefits to the plaintiff was not supported by substantial evidence.

The Commissioner argues that the ALJ described the plaintiff's RFC limited him to "simple, low stress work," and that such a limitation could translate to Reasoning Levels 1 *or* 2. Defs.' Mot. at 7-8. The ALJ, however, did not simply define the plaintiff's RFC as the ability to perform "simple, low stress work" without further elaboration. *See* Admin. R. at 23. Rather, the

ALJ defined the plaintiff's RFC by providing a detailed list of limitations, which specifically included "a marked limitation in the ability to carry out detailed instructions." *Id.* Thus, the Commissioner's contention that a limitation to "simple, low stress work" could translate to Reasoning Level 2 is of no moment, as it fails to address the other specific limitations identified by the ALJ.

Moreover, even if the plaintiff's RFC had been defined solely as a limitation to "simple, low stress work," the ALJ's decision still would not be supported by substantial evidence. "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). In this case, the ALJ did not include a restriction to "simple, low stress work" in his hypothetical to the VE. *See* Admin. R. at 23. Therefore, the VE's testimony does not constitute substantial evidence supporting the ALJ's ruling adopted by the Commissioner. *See Burns*, 312 F.3d at 123.

Accordingly, in light of the ALJ's failure to address the conflict between the VE's testimony and the DOT, the court overturns the Commissioner's ruling, grants the plaintiff's motion for judgment of reversal and denies the Commissioner's motion for judgment of affirmance. The court remands this case to the ALJ to resolve this conflict in a manner consistent with SSR 00-4p. *See Hackett*, 395 F.3d at 1176.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for judgment of reversal and denies the Commissioner's motion for judgment of affirmance.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 9th day of May, 2011.

RICARDO M. URBINA
United States District Judge